## UNITED STATES v. FEAZEL et al.
### Civil Action No. 749.

District Court, W. D. Louisiana, Monroe Division.

April 20, 1943.

Malcolm E. Lafargue and John A. Patin, both of Shreveport, La., for plaintiff.

R. H. Oliver, Jr., of Monroe, curator ad hoc.

H. H. Blanks, receiver.

Chas. J. Rivet, of New Orleans, Oliver & Digby, of Monroe, and W. C. Perrault and Arthur B. Hammond, both of Baton Rouge, for defendants.

DAWKINS, District Judge.

The suit was filed on November 20, 1942, to recover of Richard W. Leche the sum of $68,273.19, together with interest, for alleged income taxes for the years 1936 to 1939, both included. It alleged that the collector for Louisiana had received on November 5, 1940, the lists of assessments from the commissioner; that on the next day, notice thereof was given to the tax debtor and payment demanded; and on November 12, 1940, notice had been recorded in the office of clerk of this court and elsewhere, according to law. W. C. Feazel, a citizen of the Monroe Division of this court, was made party hereto, and it was alleged, with respect to Feazel, as follows:

"On November 8, 1940, said Collector did notify said W. C. Feazel, in writing, that there was then due owing, and unpaid from said Richard W. Leche to the United States of America the sum of $68,953.46 as and for internal revenue taxes; and did seize, distrain and levy upon all property, rights to property, moneys, credits, and/or bank deposits then in the possession or under the control of said W. C. Feazel and belonging to said Richard W. Leche, and upon all sums of money owing from said W. C. Feazel to

said Richard W. Leche; and said Collector did then demand of said W. C. Feazel the amount of $68,953.46, or such lesser amount as was then owing by said W. C. Feazel to said Richard W. Leche for the payment of said taxes, penalties and interest.

"The plaintiff alleges upon information and belief that said W. C. Feazel did on November 8, 1940, have property and things of value in his possession, or under his control, that belonged to said Richard W. Leche.

"Said W. C. Feazel did not on said November 8, 1940, or at any other time, surrender anything of value belonging to said Richard W. Leche to the United States."

The petition then charged that as of May 29, 1942, Feazel had in his possession "property and things of value" belonging to Leche "of not less than $100,-000 in value", including cash in bank deposits, fifty shares capital stock of the Feazel Gas Co.; a three-fourths interest in "a gas contract between W. C. Feazel and the United Gas Public Service Co." and a further interest in certain wild cat leases taken in Feazel's name.

The wife of the defendant was made a party also, for the reason, it was alleged, she claimed "some interest in the property upon which the United States" had endeavored to impress its lien.

The petition further alleged that the state of Louisiana and its Department of Highways likewise claimed some interest in the property upon which the Government asserts its tax lien, but that same was inferior to the lien of the United States; that the property and funds were in danger of being lost or encumbered, and that Feazel should be enjoined from disposing of them.

The prayer was for judgment against Leche in the sum of $68,273.19, with interest at 6 per cent from November 4, 1940; that the lien of the Government be sustained as superior to the rights of all others; that Feazel "be ordered to appear before this court * * * and under oath disclose and answer as to any and all property in his possession, or under his control, in which the said Richard W. Leche is in any manner beneficially interested"; that an injunction be issued, restraining Feazel from disposing or transferring any of the said property pending the determination of this suit; and that a receiver be appointed to take charge and control "of the property and rights to property belonging to" Leche; and for general relief.

There was no prayer for service upon anyone, but in the last paragraph preceding the prayer it was alleged that defendant Leche was confined in a Federal prison in Atlanta, Georgia, "and it will be necessary that constructive service be made upon him through a curator ad hoc to be appointed by the court, as well as personal service at the place of incarceration". There was appended to the petition and signed by a judge of this court an order directing Feazel to appear before it on December 14, 1942, "and there under oath make a full disclosure and answer to any and all property in his possession, or under his control, in which the said Richard W. Leche has in any way beneficial interest". It was further ordered that "all defendants herein show cause", at the same time "why an injunction should not be issued"; a temporary receiver was appointed to take charge and control "of the property of Leche, and to conserve and receive the income and profits derived therefrom", and "to do all other acts necessary for the enforcement and preservation of the lien of the United States * * *"; and a curator ad hoc was appointed to represent the defendant. It was further ordered that "personal service be made on all defendants * * *."

On December 10, 1942, defendant Leche and his wife filed a motion to dismiss, setting forth that (1) the court was without jurisdiction; (2) that the service should be quashed, because (a) they were "not inhabitants nor even within the district", (b) that neither had been served within the district, and (c) that the only defendant (Feazel) alleged to be an inhabitant of the district "is not a true defendant, there being between the plaintiff and the said defendant no actual controversy arising between adverse litigants". The curator for Leche also moved to dismiss for want of jurisdiction ratione persona, averring that the defendant was a resident of the Eastern District of Louisiana and in the alternative for "want of proper service".

The State and Department of Highways made return in which it was alleged that "prior to the acquisition of any lien by the United States * * *" they had in suit No. 28,912, in the state court for the Parish of Rapides, Louisiana, "seized and

garnished by writs of attachment", among other property, the following:

"(4) In the hands of W. C. Feazel:

"(a) $9,176.43 in cash;

"(b) 50 shares of the capital stock of Feazel Gas, Inc., an Arkansas corporation;

"(c) A ⅜ interest in certain gas sales and a purchase contract entered into between W. C. Feazel and United States Gas Public Service Company of date May 28, 1936;

"(d) Certain wildcat oil and gas leases of record in the name of said Feazel in which Richard W. Leche has an interest."

And therefore, "that all of said property under said seizure is under the control and subject to the authority and jurisdiction of the said Ninth District Court for the Parish of Rapides * * *." W. C. Feazel appeared in person and by answers filed admitted that he had in his possession or under his control, or that there stood in his name, certain mineral leases, rights, etc., in the parishes in this district, belonging to Leche, together with certain funds or sums of money, both in this district and in the Eastern District of Louisiana, a list of which was attached to the return.

The matter came on for hearing before this court on December 14, 1942, and at the suggestion of the court, a record was made of the facts and proceedings with respect to the claim of the United States, the suit of the State and its Department of Highways, etc., and in view of the fact that no possession had been taken of funds or property in the hands of Feazel, by the sheriff, and no bond or other security given therefor, all parties seemed to agree that something should be done for the conservation of the monies in Feazel's hands although each one who had raised the question of jurisdiction insisted upon his position.

It was finally decided that the funds should be impounded by this court, and a temporary receiver having been appointed, Feazel was directed to turn over the money, to be deposited in a local bank. Since then, as other funds have accumulated, they have been deposited in the same account to the credit of the receiver, with the proper arrangements made for their security in the bank. All this was done without prejudice to the rights of anyone involved.

The first question to be decided is, of course, the one of jurisdiction of this court to entertain the proceeding as against the alleged tax debtor, Leche, who is or was a citizen of the Eastern District of Louisiana, but at present confined in a Federal institution outside the state.

The subject matter, undoubtedly, is one over which a Federal court has jurisdiction under Sec. 57 of the Judicial Code, 28 U.S.C.A. § 118. The petition alleges a lien upon personal property (funds) and real property under Sec. 3670 of the Internal Revenue Code, (26 U.S.C.A. Int.Rev.Code § 3670), and is brought in accordance with Sec. 3678 of the same code. The latter section authorizes the bringing of a civil action where, in any case, there has been refusal or neglect to pay any taxes and "it has become necessary to seize and sell property and rights to property whether real or personal * * * whether distraint proceedings have commenced or not * * * in a district court of the United States, to enforce the lien * * * upon any property and rights to property, whether real or personal * * *" to subject the same "to the payment of such tax". The petition alleges that jeopardy assessments were made for the taxes of these four years, on November 5, 1940, which are authorized by Sec. 273 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 273. Such assessments may be made whether the Board of Tax Appeals (now Tax Court) has finally acted or not, and the only way in which collection can be stayed is by the giving of bond in an amount to cover not exceeding double the amount of the taxes.

The petition alleges that Feazel, a resident of this district, is in possession of funds and property belonging to the tax debtor, and the nature of the suit is such that its purpose is to assert and enforce a lien upon these funds and property arising from the tax liability. Sec. 57 of the Judicial Code, 28 U.S.C.A. 118, also authorizes the bringing of an action to enforce such a lien upon property "within the district where such suit is brought" and if "one or more of the defendants * * * shall not be an inhabitant of or found within the said district * * *" the court may make an order for service upon such defendant or defendants "wherever found, and also upon the person or persons in possession or charge of said property," etc. It was held by the Court of Appeals for this circuit in United States v. Haar, 27 F.2d 250

that in an action for collection of income taxes, in addition to the express authority granted "by the Revenue Act" to file a bill to impress upon real estate a tax lien, the United States has the same standing to prosecute a suit to enforce her rights as one of her citizens would have. Asserting a lien on specific property, whether real or personal, she could maintain a suit in equity to establish a debt and impress the property with a lien. In the present case, a curator for Leche was appointed, upon whom service was made, and in addition process was sent to and served upon him in Atlanta, in accordance with the order entered by this Court when the suit was filed. This, it would seem, is sufficient to permit this court to determine the amount of taxes and to allow recovery therefor to the extent of the value of the property seized in this district. United States v. Haar, supra. Where the property is situated in two or more districts in the same state, the suit may be brought in either. 28 U.S.C.A. § 118.

A more serious question is raised by the State and Department of Highways, arising from the proceedings brought by them in the State Court for Rapides Parish. Certified copies of that record have been filed in evidence, from which it appears that the State and Department of Highways sued defendant, Richard W. Leche, a resident of St. Tammany Parish, James Thomas, residing in East Baton Rouge Parish, L. P. Abernathy, residing in Ouachita Parish, George B. Younger, and Younger Motor Truck Co., residents of Rapides Parish, in solido for the sum of $111,370.56, with interest, less a credit of $53,000, as for a tort, growing out of an alleged conspiracy between these persons, in which the State and Department of Highways was alleged to have been defrauded to that extent in a deal for the purchase of some 233 highway trucks. W. C. Feazel, a resident of Ouachita Parish, in this district, along with many other individuals, banks, firms and corporations, was made a party garnishee to the suit in the state court, and in response to the interrogatories propounded therein, Feazel answered that he held in his possession property belonging to Leche as follows:

"(a) The sum of $9,176.43 in cash due the said Richard W. Leche for account of sums received by W. C. Feazel from interest in the sale of natural gas;

"(b) Fifty shares of the capital stock of Feazel Gas, Inc. a corporation organized under the laws of the State of Arkansas;

"(c) A ⅜ interest in that certain gas sales and purchase contract between W. C. Feazel and United Gas Public Service Company, of date May 28, 1936, relating to the sale by this appearer and the purchase by United Gas Public Service Company of gas in the Rodessa Field in Caddo Parish, Louisiana;

"(d) Appearer has taken in his name interest in certain "wild-cat" oil and gas leases in which the defendant Richard W. Leche has an interest, but appearer has executed to the said Leche assignments of all of the interest of said defendant in such leases although appearer is informed that such assignments have not as yet been recorded."

At the time of the hearing in the present case it was shown that, notwithstanding this answer to the garnishment filed by Feazel on November 6, 1940, pursuant to service made on October 25, 1940, he still retained the property and funds in his possession and the cash had increased to approximately $70,000; whereas it was admitted by counsel for the State, and Department of Highways that the balance due to them had been reduced to $35,000 in round figures.

The Louisiana Code of Practice provides for the seizure by a creditor of property of his debtor, (Art. 242 La.C.P.), "whether the amount be liquidated or not", and for the making of third persons parties defendant through garnishment (Art. 246 C.P.). Article 247 provides: "And in case a garnishee acknowledges himself indebted to the defendant, it shall be lawful for the judge to order said garnishee to be held to bail in the same case as if he was the original defendant, unless he prefers depositing the money in court."

Other articles (248 and 249 C.P.) provide for the arrest of a garnishee if it believes that he will leave the jurisdiction of the court, but he may be released when he "has no intention of leaving the State; or if he immediately, in the presence of the court, answer in writing and pertinently to the interrogatories put to him, and file such answer in the office of clerk of the court". Article 257 requires the sheriff to "take charge" of all prop-

684

erty of the debtor seized, "with the exception of such sums which may be due by the garnishee"; and article 263 provides that if the garnishee fails to answer within the legal delays, the same is "considered as a confession of his having in his hands property belonging to the debtor, sufficient to satisfy the demand * * * and judgment shall be rendered against him for the amount claimed * * *". In the present case the garnishee, Feazel, answered, admitting that he had in his hands or under his control (1) the sum of $9,176.43 received from "the sale of natural gas"; (2) fifty shares of the capital stock of the Feazel Gas Co.; (3) three-ninths interest in a certain sales and gas purchase contract between Feazel and the United Gas Public Service Co. of date May 28, 1936, covering sale of natural gas in the Rodessa Field in Caddo Parish, Louisiana.

Certified copies of the proceedings in the state court show no appearance by anyone. For more than two years the plaintiffs there have allowed the matter to stand without action and without requiring the funds admitted to be in the hands of Feazel to be paid into court or requiring him to give bond for their security, while receipts from the contract mentioned have continued to pile up until, as above stated, instead of approximately $9,000, they now amount to more than $70,000. Does the law sanction such inaction? If it does, then a creditor can, by the simple filing of such a proceeding, tie up future earnings or income of his debtor, and hold off other creditors indefinitely. The state courts have answered this question and in the negative. In the case of Humphrey v. Midkiff, 122 La. 939, 48 So. 331, 332, 20 L.R.A.,N.S., 912, the plaintiff had garnished the salary of the secretary of a corporation which denied that it was indebted to the defendant, but it developed that a scheme to shield him from his creditors had been attempted, which the court held to be a mere subterfuge. Notwithstanding the court rejected the contention that the effect of the garnishment, over a period of several months required to conclude the litigation, had been to subject the subsequently maturing instalments to the seizure under the writ. In this connection the court said:

"The right of the creditor who seeks to recover the amount of wages is fixed from the moment the garnishee makes answer to the interrogatories. The writ of garnishment cannot be made to do service in securing salaries not earned at the time of the service. If it could be held otherwise, the writ might be held in suspense over the debtor's head for an indefinite time while he is at work.

"In any event, the garnishment process should not be used as an agent to collect future earnings. That is not the intention of the law.

"We have examined the decisions to which learned counsel for plaintiff invited our attention.

"In Buddig v. Simpson, 33 La.Ann. [375] 377, it was decided that property of the debtor falling into possession of the garnishee after notice of garnishment is affected by the seizure. In that decision, different from the present case, the property was in esse at date of service."

See also Murphy v. Thielen, 6 Rob. 288, in which the garnishment was of funds in the hands of a sheriff, who had received them originally as judicial sequestrator. The following is quoted therefrom: "We are of opinion, that this seizure did not embrace any fund not at that time in the hands of Buisson. A sum of money which may or may not be received, without any specification of amount, even by conjecture or approximation, is a thing too vague to form the object of a seizure under execution. It cannot be identified, nor when sold, handed over to the purchaser by the Sheriff. Not only the fund in the hands of Thielen, afterwards levied on by Murphy, never was in the possession of Buisson, but it appears to have been collected afterwards by that officer, who, it is true, carried it to the credit of the judicial sequestrator on his books, but did not pay it over, it having, in the meantime, been seized in his hands by the present appellant. Now, although it may be true, as assumed by our learned brother of the District Court, that the appointment of Buisson still subsisting, authorizing him to collect all the official dues of Hozey, the late Sheriff, Thielen, would have been authorized to pay over such sums as may have been afterwards collected by him, it does not follow, we think, that a specific amount thus collected, is embraced in the vague description of the original seizure, so far as other creditors of Hozey are concerned."

Normally, as to funds in his hands at the time of service of the writ

and notice, the garnishee becomes the legal custodian for the state court, and they can not be seized or taken from him by any other court. Denniston v. New York-Croton, etc., 6 La.Ann. 782; Dwight v. Mason, 12 La.Ann. 846. This court, of course, is bound by the interpretation of the statutes of the state by its own courts. Arts. 250–257, C.P.

The conclusion is that, insofar as the funds in the hands of Feazel, at the time of the service. of the garnishment process in the State Court, to-wit, $9,176.-43 and the fifty shares of stock in the Feazel Gas Co., were concerned, the effect was to draw them under the jurisdiction and control of that court. However, the fact that Feazel was a party to that proceeding did not prevent the Government or any other creditor of Leche from making him party to an action looking to a realization of their claims against funds or property subsequently coming into his possession.

Feazel's answer, that defendant Leche had a ⅗ interest in the contract of the purchase and sale of gas, simply amounted to a disclosure of the source from which the funds admitted to be in the hands of the former were realized; and since the answer to interrogatories "(d)" of the garnishee disclosed that the interest of Leche in the "wildcat" leases had been conveyed to him by written assignment, the title had been vested in him to a species of real property, the extent and nature of which could readily have been ascertained by appropriate pleading in the State Court suit to compel him to make disclosure, and hence are not of a character to be drawn into the custody by garnishment. In other words, the answer of the garnishee was, in effect, that he no longer held any interest in that property.

From what has been said it follows that the receiver appointed in this case should, upon proper application by the sheriff of the State Court, turn over to the latter the sum of $9,176.43, to be administered there, and the Government will have to assert its claim to a superior lien before that tribunal.

With respect to the remainder of the fund in the receiver's hands, this Court has power and jurisdiction to deal therewith but it will have to be done after the trial on the merits.

The motions to dismiss will be denied.