## UNITED STATES v. LIAS et al.
### Civ. A. No. 565.

United States District Court
N. D. West Virginia, Wheeling Division.
March 3, 1952.

Homer R. Miller, Sp. Asst. to Atty. Gen., Howard Caplan, U. S. Atty. for Northern District of West Virginia, Clarksburg, W. Va., H. Clare Hess, Asst. U. S. Atty., Fairmont, W. Va., and Milford L. Gibson, Asst. U. S. Atty., Kingwood, W. Va., for plaintiff.

Charles Margiotti and Samuel Goldstein, of Pittsburgh, Pa., Thurman Hill, of Washington, D. C., Carl G. Bachmann and Charles L. Ihlenfeld, of Wheeling, W. Va., for defendants.

WATKINS, District Judge.

This is an action brought by the United States to foreclose liens for income taxes for the years 1942 to 1947, inclusive, assessed and outstanding against William G. Lias in the total sum of $2,442,944.61, plus interest (including assessed interest and penalties); against Automatic Cigarette Sales Corporation for income, declared value excess profits, and excess profits taxes for 1944, in the amount of $176,455.42, plus interest; and against Zeller's Steak House, Inc., for the fiscal years ended June 30, 1943 to June 30, 1946, inclusive, income, declared value excess profits, and excess profits taxes, in the amount of $124,795.73, plus interest. In this proceeding to foreclose its liens the United States has made a motion for the appointment of a receiver, and upon this motion for the appointment of receivers a hearing was had. There are two issues now to be decided: (1) Is the United States entitled to have a receiver appointed to enforce its liens with all the powers of a receiver in equity as to the assets of William G. Lias, Automatic Cigarette Sales Corporation, and Zeller's Steak House, Inc. (hereinafter referred to as taxpayers), where the Commissioner has filed a certificate as provided by statute pursuant to the provisions of Section 3678(d), Internal Revenue Code, 26 U.S.C.A. § 3678(d)?; (2) is the United States entitled, under the unusual facts of this case to have a receiver appointed to protect and conserve the assets of other non-taxpayer corporations whose stock is alleged to be owned in whole, or a majority thereof, by the defendant William G. Lias, until such time as the ownership of such stock can be determined, where the stock owned by William G. Lias in those companies is subject to the tax liens of the United States?

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and only under the evidence in this case upon the issue of appointment of receivers, I make the following findings of fact and conclusions of law:

Findings of Fact.

1. The taxes in question were assessed by the Commissioner pursuant to law. The collector received the assessment list, and made notice and demand on the taxpayers, all prior to the institution of this suit. A tax lien was acquired by the United States under Sections 3670 and 3671, Internal Revenue Code, 26 U.S.C.A. §§ 3670, 3671, against all property and rights of property of the taxpayers. Effort was made (and

without success) by the collector to collect the assessments here involved prior to the institution of suit.

2. Such assessments were jeopardy assessments made by the Commissioner of Internal Revenue under Section 273(a) of the Internal Revenue Code, 26 U.S.C.A. § 273(a). Following the making of the jeopardy assessments by the Commissioner, taxpayers filed a petition with the Tax Court for a redetermination of the deficiencies under Section 272(a) (1) Internal Revenue Code, 26 U.S.C.A. § 272(a) (1). The United States has filed this suit to foreclose its tax liens under Section 3678 Internal Revenue Code.

3. The Commissioner has filed a certificate under Section 3678(d) that it is in the public interest to appoint a receiver with all the powers of a receiver in equity.

4. Zeller's Steak House is insolvent. It is an inactive corporation and no one has taken charge of its assets and affairs.

5. It will be necessary to sell and liquidate the assets of Automatic Sales Corporation, and upon such sale and liquidation it is very doubtful whether the entire tax and interest can be collected. The major portion of the assets of the taxpayers consist of claims against the non-taxpayer corporations. The collection of these claims is necessary in order to pay the government's tax liens. The evidence indicates that these claims will not be collected unless a receiver is appointed to enforce collection.

6. There has been much waste and dissipation of the assets of these taxpayer companies. For example, assets of William G. Lias have been transferred to the non-taxpayer corporations. Dividends which should have been paid to Zeller's Steak House, Inc. (now insolvent), from Market Street Club, a very profitable gambling enterprise in which William G. Lias was an alleged partner, have been diverted into Wheeling Downs, Inc., a non-taxpayer. Thereby these taxpayer defendants have either become insolvent, or so nearly so that a receiver is necesary to prevent further dissipation and waste of their assets and diversion of their assets into Wheeling Downs, Inc., Wheeling Racing Association and Laconia, Inc.

7. The non-taxpayer companies, including Wheeling Downs, Inc., Wheeling Racing Association, and Laconia, Inc., are heavily indebted to the taxpayers. Wheeling Downs, Inc., owes the taxpayers $491,500 of which $400,000 is owing to William G. Lias. Wheeling Downs, Inc., owes Laconia, Inc., $458,767.90, and owes the Wheeling Downs Racing Association $411,969.80 according to company records. Wheeling Downs, Inc., also owes Market Street Club $75,000. Although Wheeling Downs, Inc., owes $1,438,737.70 to other Lias enterprises, it has very little liquid assets, its chief assets consisting of a race track and improvements. Wheeling Downs, Inc., is unable to pay its indebtedness to the taxpayers such as William G. Lias, Automatic Cigarette Sales Corporation and Zeller's Steak House, Inc., without selling, mortgaging or liquidating its permanent assets. The primary income of Wheeling Downs, Inc., consists of rentals from Wheeling Downs Racing Association. Wheeling Downs Racing Association has a five-year lease on the race track with a five-year renewal privilege. Thereby the property of Wheeling Downs, Inc., is tied up with Wheeling Downs Racing Association under that lease.

8. There is substantial evidence in the record and reasonable cause to believe that William G. Lias owns a majority of the stock in the non-taxpayer companies. Indeed, there is substantial evidence and reasonable cause to believe that he owns all of the stock in Wheeling Downs, Inc., Wheeling Downs Racing Association and Laconia, Inc., the non-taxpayer corporations. Three government revenue agents testified that William G. Lias told them that everything in the name of Alice Lias, his wife, John Lias, his brother, Mary Koutroumanos, his mother-in-law, Gregory Koutroumanos and William Koutroumanos, his brothers-in-law, was his, and that the corporations and partnerships "was him", and that all the cash in the family was his and subject to use as he saw fit. This evidence is corroborated by the pencil notes of the

government's agent Price taken at the time of the conference with Lias. Neither William G. Lias nor any of these relatives took the witness stand to deny this evidence or to testify that they were the owners of any stock, or to give any evidence as to the circumstances under which it was purchased or the consideration for the stock transfers to them.

9. There is substantial evidence in this record and reasonable cause to believe that the transfers of stock to Lias' relatives on November 1, 1948 were made without consideration.

10. William G. Lias admits that he and his wife own a majority of stock in all of the non-taxpayer companies. It is admitted by David Goldberg, Lias' accountant, who testified in his behalf, that William G. Lias has made statements that he controls the stock in all of the companies and deals with the assets as if they were his own; that the family is clannish, and that he is the virtual boss of all the companies. To leave those companies under his control in view of their past history and the intermingling of assets between these Lias enterprises may seriously impede the government in the collection of its taxes from William G. Lias, from Zeller's Steak House, Inc., and Automatic Cigarette Sales Corporation, and would open the door to waste and dissipation of assets in the future.

11. After the government's tax lien arose on October 18, 1951, some of the corporations paid out large sums to William G. Lias (even after receipt of notice and demand, and in one or two cases, after levy). Lias immediately disbursed the amounts collected in payment of debts and obligations of his own, completely ignoring the tax liens. Payments by these companies to John Lias and Alice B. Lias and other relatives have, in the past, come into the hands of William G. Lias for use as he deemed advisable. The only adequate remedy in such a situation is to appoint a receiver for all the companies and to hold all assets until stock ownership is determined, and until such time as it can be determined whether an equity receiver is necessary to liquidate the assets of these non-taxpayer corporations to pay the tax liens against William G. Lias. If it is finally determined that William G. Lias is the owner of all, or the majority of the stock in these non-taxpayer corporations, then the Lias receiver could vote the Lias stock to liquidate such corporations to pay the tax liens. It is obvious that the government would realize more from this type of liquidation than from the mere sale of corporate stock.

12. Many inter-company debts and accounts involving hundreds of thousands of dollars, mostly in favor of the taxpayers and against the non-taxpayer companies, have been outstanding for several years. Within a few months some of these debts due the taxpayers, upon which the government has a lien, will have been barred by the statute of limitations. In most cases there is no evidence of indebtedness and no payment of interest. No security has been asked or executed, not even unsecured notes. No time has been fixed for payment. These accounts have been manipulated and handled by William G. Lias as he saw fit. The evidence shows that no action will be taken to collect these accounts unless receivers are appointed, and in order to see that none of the inter-company debts secures priority over other inter-company debts, it is necessary to appoint a receiver for all of the companies. There is substantial evidence to indicate that in order to enforce the lien of the government it will be necessary to liquidate the non-taxpayer corporations, if upon a final hearing on stock ownership it is determined that William G. Lias is the owner of all, or a majority of the stock in the non-taxpayer corporations.

13. For many years William G. Lias has been keeping assets, including stocks, real estate and bank accounts in the names of others than the true owners, the effect of which has been to conceal his assets. Several of his partnerships have been liquidated, and in some cases money has been diverted into the non-taxpayer companies. There is substantial evidence to show that during the past several years there has been a steady transfer of assets of William G. Lias and the taxpayer corporations into non-taxpayer corporations, in which the company records show him to be only a minority stockholder. In the meantime the

non-taxpayers, with the assets, have kept their taxes paid, whereas taxpayers have permitted large tax liens to be filed against them.

14. William G. Lias has used the funds of his brother John Lias, and his brothers-in-law Gregory Koutroumanos and William Koutroumanos as his own and has taken these funds and invested them or loaned them to non-taxpayer companies. No record has been kept of these loans except the cancelled checks or check stubs. No security or other evidence of obligations has been taken from the companies securing the money, and without any interest being charged or without fixing any time for payment. These relatives have permitted these loans to run for a long time without asking any payment thereon.

15. On one occasion Laconia, Inc., and Automatic Cigarette Sales Corporation borrowed $500,000, all of which was paid over to Wheeling Downs, Inc. Transfers were made from one corporation to another in any way that William G. Lias saw fit. The minutes of the directors' of Wheeling Downs Racing Association dated April 30, 1950, show that William G. Lias on that date was authorized to negotiate for and consummate loans from other corporations in the group as he saw fit, and was given blanket powers to transfer moneys of one corporation to the other. For example, funds of Automatic Cigarette Sales Corporation were transferred to Wheeling Downs, Inc., amounting to $85,500. No notes have been given to evidence this debt and no payments have been made. Of this amount $50,000 was transferred on December 31, 1947. Defendants' books indicate that this was a loan, but if a loan, it will be barred by the five-year West Virginia statute of limitations on December 31 of this year.

Funds of Market Street Club (a Lias enterprise engaged in gambling) were transferred to Wheeling Downs, Inc., amounting to $85,000 between August 8, 1947 and November 7, 1947, of which $75,000 still remains unpaid. No notes have been given, and there is no evidence of any effort to collect, if the same constituted a loan. The statute of limitations on this debt is five years.

Zeller's Steak House owned a 28⅓ interest in the partnership of Market Street Club. Its share of the profits distributed for the year 1945 was $57,804.93, whereas it was paid only $20,000; its share of the profits in this gambling club for 1946 was $91,867.83, whereas it received only $55,000, and in 1947 its distributive share of the profits was $48,065.60, whereas it received only $2,500. The books do not show where all these undistributed profits went, but Goldberg, William G. Lias' accountant, says a large part of it went to Wheeling Downs, Inc. Zellers was not a stockholder in Wheeling Downs, Inc. The present balance due Zellers, a taxpayer defendant, for its distributive share of these profits is $91,195.57. How much of this amount is barred by the statute of limitations is not known. No notes have been given, no interest paid, and no effort made to collect. At times William G. Lias drew more than his share of these profits. The books of Market Street Club show that John Lias owned 28⅓% and Gregory Koutroumanos owned 15% of this partnership, but checks payable to John Lias and Gregory Koutroumanos for their share of the profits were endorsed by them and turned over by William G. Lias to Wheeing Downs. Credit on the books of Wheeing Downs for the money so advanced was given to William G. Lias. The income taxes of John Lias, Alice Lias, Gregory Koutroumanos and William Koutroumanos were sometimes paid out of funds of Market Street Club and Automatic Cigarette Sales Corporation.

16. No records were kept concerning inter-family debts except the check stubs and cancelled checks. No adjustments as to dividends and taxes which have been paid were made by the Lias relatives following the December 18, 1946 and November 1, 1948 stock transfers. In the absence of any testimony on the part of William G. Lias, John Lias, Alice Lias, Gregory Koutroumanos and William Koutroumanos there is little evidence in the record to support William G. Lias' claim that he is only a minority stockholder except the record of

ownership of the stock, and the fact that certain gift tax returns and income tax returns were filed by the respective parties.

17. During this period that William G. Lias was making transfers of assets from one corporation to another as he saw fit, the bank account of Market Street Club was carried in a fictitious name. William G. Lias for many years carried his bank account in the name of his wife. From 1940 to 1946 he had no bank account in his own name. William G. Lias carried real estate in the name of his mother-in-law Mary Koutroumanos, and carried other real estate in the name of his wife Alice B. Lias. Income tax returns were filed by relatives of William G. Lias but the taxes thereon were paid by William G. Lias or some of the Lias enterprises. Insurance premiums for relatives such as his brother-in-law William Koutroumanos were also paid by William G. Lias. There is substantial evidence to show that William G. Lias took not only all of his own income from these various companies, but also took all of John Lias' income and all of the income of his wife Alice Lias, and William Koutroumanos and Gregory Koutroumanos, paid their income taxes and insurance premiums, and invested the balance as he saw fit, most of the money going into the Wheeling Downs race track and the valuable Laconia office building in Wheeling, West Virginia.

18. The tax lien against William G. Lias amounting to $2,442,944.21 arose on October 18, 1951, when the collector received the jeopardy assessment. On October 20, 1951, William G. Lias collected $18,063.31 from Wheeling Downs, Inc. Thereafter Wheeling Downs, Inc., on November 26, 1951, advanced him $5,000, and the further sum of $1,750. On October 20, 1951, Laconia, Inc., paid William G. Lias $22,725, believing it owed him that much money, whereas the books of Laconia, Inc., showed that William G. Lias owed Laconia, Inc. $22,725. As a result William G. Lias now owes Laconia, Inc., $45,450. The evidence does not show where this money went. On October 20, 1951, Wheeling Downs Racing Association paid dividends of $25,000, and on the same date Laconia, Inc., paid dividends of $6,222. On October 20, 1951,

Wheeling Downs Racing Association paid John Lias $7,600.

In 1946 and 1947 Market Street Club, the highly profitable gambling establishment, carried its bank account in a fictitious name (Verner Sales Company). Government Exhibit 6 is a check of Verner Sales Company payable to John Lias in the amount of $10,000. The check was endorsed by John Lias, deposited to the account of Wheeling Downs, Inc., and William G. Lias was given credit therefor on the books of Wheeling Downs, Inc. This is a typical transaction.

In the month of July, 1947, the sum of $289,192.24 was credited by Wheeling Downs, Inc., to William G. Lias, although much of this amount came from cash or checks payable by the Lias companies to Alice Lias, John Lias, Gregory Koutroumanos or William Koutroumanos. No records were kept between these relatives to show what amount each had advanced to the William G. Lias account. William G. Lias kept no personal account books. The records of Wheeling Downs, Inc., show that most of this money came to Wheeling Downs, Inc., by cash so that there are no records, not even check stubs or cancelled checks, to show how much of the money paid in cash to Wheeling Downs, Inc., and credited to William G. Lias on the company books came from Alice Lias, John Lias, or other relatives, making it impossible to have an accounting between Lias and these relatives. The amounts were not small. For example, the amount of money transferred to Wheeling Downs, Inc., in this manner and credited as though the money all came from and belonged to William G. Lias was $289,192.24 for the single month of July, 1947.

19. If the stock transfers made on the books of the Lias corporations by William G. Lias to members of his family are valid, then William G. Lias is insolvent and unable to pay the jeopardy tax assessment liens outstanding against him.

20. Receivers of the taxpayers will be required to reduce their claims against Wheeling Downs, Inc., to judgment and to sell the Downs race track to pay these claims amounting to about one-half million dollars. The government has a tax lien

upon all such claims owned by the taxpayer companies against Wheeling Downs, Inc., and other companies. This will be true irrespective of who owns the Downs stock. This would mean a liquidation of Wheeling Downs, Inc., and would mean that legal proceedings would stop any operation of the race track, whereas it could be operated under receivership if such operation was found to be for the best interest of all parties. Furthermore, Wheeling Racing Association must have $200,000 to begin the spring race meet. It has no assets out of which to borrow this money.

## Conclusions of Law.

1. This court has jurisdiction of the parties and of the subject matter of this action.

■ 2. Under the evidence in this case the government is entitled to the appointment of an equity receiver for William G. Lias, Automatic Cigarette Sales Corporation and Zeller's Steak House, Inc., with all the powers of a receiver in equity.

■ 3. While the question of ownership of stock is not determined in this hearing, there is substantial evidence in this record to show and reasonable cause to believe that William G. Lias is the owner of all or a majority of the stock in the non-taxpayer corporations, Wheeling Downs, Inc., Wheeling Downs Racing Association, and Laconia, Inc.; that such stock or interest in stock as he now owns is subject to the tax liens of the United States; and that the United States is entitled to the appointment of a receiver to protect and preserve the assets of such non-taxpayer corporations until such time as the true ownership of stock can be determined.

■ 4. There is substantial evidence in this record, and reasonable cause to believe that stocks were transferred without consideration, and in fraud of creditors, including the United States. Upon a hearing of the stock ownership question, if it be determined that stocks were transferred without consideration and in fraud of creditors, including the United States, such stocks can be reached by the government under the well established trust fund theory. The government is therefore entitled to a

receiver to operate these companies or to preserve and conserve their assets until it is determined how much stock William G. Lias owns in the non-taxpayer corporations. The government has no other adequate remedy at law.

■ 5. There is no merit in the defense of res adjudicata. The criminal case of United States v. William G. Lias in this court (A–6254) did not adjudicate any of the issues raised in this civil action.

## Discussion.

In making the above findings of fact and conclusions of law, I want to make it clear that I am not deciding the issue of ownership of stock. The issue before me here is whether, under the evidence adduced on this hearing, the government is entitled to the appointment of receivers to protect and conserve the assets of these defendants until such time as the ownership of stock and the amount of the taxes can be determined. Much evidence has been offered at this hearing concerning ownership of stock, because stock ownership has a bearing upon the question of receivership of the non-taxpayer corporations. My finding is that, upon the record before me, there is substantial evidence, and reasonable cause to believe that William G. Lias owns a majority of the stock in these corporations, and that there is substantial evidence, and reasonable cause to believe that he owns all of the stock in these Lias enterprise corporations.

Upon a full hearing upon the question of stock ownership, the evidence then presented may show that William G. Lias is only a minority stockholder in these non-taxpayer corporations, which now own the bulk of the assets.

■ Because of the large open account claims which these companies have against each other, which must be protected by appropriate legal action, it is necessary to appoint separate receivers where such adverse interests appear.

■ It will be the aim of the court to conserve the properties, maintain the business as a going concern, where that seems to be the best interest of the parties, and

finally, when the rights of all parties have been determined, conserved and satisfied, to turn the property back to the owners, as their interests may be adjudicated, in a healthy and prosperous condition with its good will preserved. United States v. Pettyjohn, D.C.W.D.Mo., 84 F.Supp. 423, 427.