## LIAS et al. v. UNITED STATES.

### No. 6405.

United States Court of Appeals Fourth Circuit.

Argued April 2, 1952.

Decided April 4, 1952.

Charles J. Margiotti, Pittsburgh, Pa., (Thurman Hill, Washington, D. C., Carl

G. Bachmann and Charles L. Ihlenfeld, Wheeling, W. Va., on the brief), for appellants.

Homer R. Miller, Sp. Asst. to the Atty. Gen., (Ellis N. Slack, Acting Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. to the Atty. Gen., Howard Caplan, U. S. Atty., Clarksburg, W. Va., H. Clare Hess, Asst. U. S. Atty., Fairmont, W. Va., and Milford L. Gibson, Asst. U. S. Atty., Kingwood, W. Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PER CURIAM.

This is an appeal from an interlocutory order appointing receivers for William G. Lias and five corporations alleged to be owned and controlled by him. The order was entered in an action instituted by the United States to foreclose liens for income and excess profits taxes, which with interest and penalties amounted to more than two and one-half millions of dollars, and were owing by Lias and two of the corporations. The other three corporations were alleged to be owned and controlled by Lias and to be used by him in connection with the other corporations in such way as to conceal and cover up his assets. The stock in them was held in the name of Lias and his wife and brother; but the judge, while not finally determining the fact, found that there was reasonable ground to believe that Lias was the owner of all the stock in these corporations and that he had so stated to the agents of the government. With respect to the need for a receivership the judge found the facts fully, some of the findings being as follows:

"10. William G. Lias admits that he and his wife own a majority of stock in all of the non-taxpayer companies. It is admitted by David Goldberg, Lias' accountant, who testified in his behalf, that William G. Lias, has made statements that he controls the stock in all of the companies and deals with the assets as if they were his own; that the family is clannish, and that he is the virtual boss of all the companies. To leave these companies under his control in view of their past history and the intermingling of assets between these Lias enterprises may seriously impede the government in the collection of its taxes from William G. Lias, from Zellers Steak House, Inc., and Automatic Cigarette Sales Corporation, and would open the door to waste and dissipation of assets in the future.

"11. After the government's tax lien arose on October 18, 1951, some of the corporations paid out large sums to William G. Lias (even after receipt of notice and demand, and in one or two cases, after levy). Lias immediately disbursed the amounts collected in payment of debts and obligations of his own, completely ignoring the tax liens. Payments by these companies to John Lias and Alice B. Lias and other relatives have, in the past, come into the hands of William G. Lias for use as he deemed advisable. The only adequate remedy in such a situation is to appoint a receiver for all the companies and to hold all assets until stock ownership is determined, and until such time as it can be determined whether an equity receiver is necessary to liquidate the assets of these non-taxpayer corporations to pay the tax liens against William G. Lias. If it is finally determined that William G. Lias is the owner of all, or the majority of the stock in these non-taxpayer corporations, then the Lias receiver could vote the Lias stock to liquidate such corporations to pay the tax liens. It is obvious that the government would realize more from this type of liquidation than from the mere sale of corporate stock.

"12. Many inter-company debts and accounts involving hundreds of thousands of dollars, mostly in favor of the taxpayers and against the non-taxpayer companies, have been outstanding for several years. Within a few months some of these debts due the taxpayers, upon which the government has a lien, will have been barred by the statute of limitations. In most cases there is no evidence of indebtedness and no payment of interest. No security has been

asked or executed, not even unsecured notes. No time has been fixed for payment. These accounts have been manipulated and handled by William G. Lias as he saw fit. The evidence shows that no action will be taken to collect these accounts unless receivers are appointed, and in order to see that none of the inter-company debts secures priority over other inter-company debts, it is necessary to appoint a receiver for all of the companies. There is substantial evidence to indicate that in order to enforce the lien of the government it will be necessary to liquidate the non-taxpayer corporations, if upon a final hearing on stock ownership it is determined that William G. Lias is the owner of all, or a majority of the stock in the non-taxpayer corporations.

"13. For many years William G. Lias has been keeping assets, including stocks, real estate and bank accounts in the names of others than the true owners, the effect of which has been to conceal his assets. Several of his partnerships have been liquidated, and in some cases money has been diverted into the non-taxpayer companies. There is substantial evidence to show that during the past several years there has been a steady transfer of assets of William G. Lias and the taxpayer corporations into non-taxpayer corporations, in which the company records show him to be only a minority stockholder. In the meantime the non-taxpayers, with the assets, have kept their taxes paid, whereas taxpayers have permitted large tax liens to be filed against them.

\* \* \* \* \* \*

"18. \* \* \* In the month of July, 1947, the sum of $289,192.24 was credited by Wheeling Downs, Inc. to William G. Lias, although much of this amount came from cash or checks payable by the Lias companies to Alice Lias, John Lias, Gregory Koutroumanos or William Koutroumanos. No records were kept between these relatives to show what amount each had advanced to the William G. Lias account. William G. Lias kept no personal account books. The records of Wheeling Downs, Inc. show that most of this money came to Wheeling Downs, Inc. by cash so that there are no records, not even check stubs or cancelled checks, to show how much of the money paid in cash to Wheeling Downs, Inc. and credited to William G. Lias on the company books came from Alice Lias, John Lias, or other relatives, making it impossible to have an accounting between Lias and these relatives. The amounts were not small. For example, the amount of money transferred to Wheeling Downs, Inc. in this manner and credited as though the money all came from and belonged to William G. Lias was $289,192.24 for the single month of July, 1947."

Whether under the circumstances thus disclosed a receiver should be appointed for the conservation of assets *pendente lite* was a matter resting in the sound discretion of the District Judge. 26 U.S.C.A. § 3678; United States v. Feazel, D.C., 49 F.Supp. 679. There was clearly no abuse of the discretion in this case.

Affirmed.