### UNITED STATES v. LIAS et al.
### No. 565–W.

United States District Court
N. D. West Virginia, Wheeling Division.
July 10, 1953.

Homer R. Miller, Spec. Asst. to the Atty. Gen., Howard Caplan, U. S. Atty. of Clarksburg, W. Va., H. Clare Hess, of Fairmont, W. Va., and Milford L. Gibson, of Kingwood, W. Va., Asst. U. S. Attys., for the Government.

Charles J. Margiotti, Pittsburgh, Pa., Thurman Hill, of Washington, D. C., Carl G. Bachmann and Charles L. Ihlenfeld, of Wheeling, W. Va., for defendants.

WATKINS, District Judge.

This case is now before me upon the question of amount of allowance to receiver and general manager of Wheeling Downs Racing Association. For reasons set out in a written opinion filed by me in this case and reported in D.C., 103 F.Supp. 341, I felt it necessary to grant the motion of the government to appoint a receiver for Wheeling Downs Racing Association, which operates Wheeling Downs, a race track at Wheeling, W. Va. That decision was affirmed on appeal in 4 Cir., 196 F.2d 90. Carl Schmidt, an attorney of Wheeling, W. Va., was appointed receiver on February 22, 1952.

The receiver reported to the court that the prior manager of the track, William G. Lias, had refused to serve as manager of the track for the scheduled spring meet beginning in April, 1952, and that without the services of Lias, he did not believe he could profitably operate the track. The April, 1952 meet was cancelled.

Later Lias changed his attitude and agreed to serve as manager of the track under the receiver. He asked to be employed at the same yearly compensation which he had received for the year ending April 30, 1951, prior to the receivership when he was paid $60,000 for his services. He was employed as manager of the track with the understanding that he would be allowed such compensation as the court deemed fair and reasonable. He was told that his compensation would depend, in part, upon the results accomplished for the receivership,—that the more money he was able to make for the receivership, the more valuable his services would be, and the more compensation could be allowed him.

He has served as general manager of the race track since July 18, 1952. Two racing meets were thereafter held in 1952, one in the summer and another in the fall. A total of $16,930,270 was handled during these two meets. The races were attended by 288,567 persons. The State of West

Virginia received over $700,000 from the two meets. Over $500,000 was realized in profits to the receivership before deduction of current federal income taxes and compensation to the receiver and general manager. The meets were the most successful, both in attendance and in profits, in the history of the track. A third meet was held in May, 1953. Although handicapped by rain and competition from a nearby track, profits of $119,000 were realized, before payment of federal income taxes and compensation to the receiver and general manager.

For the period from April 30, 1951 to February 22, 1952, the date the receiver was appointed, Lias was paid $35,000 as part compensation for his services. For the year preceding, he was paid $60,000 for his services, and the two years preceding that he was paid $35,000 each year as general manager of the track. Prior to that time a man by the name of Dieckman was manager of the track on a part time basis— that is to say, he was only employed during the meets and for a period of about two weeks prior to a meet. He received $23,000 as manager the last year he was there, this being based upon a salary plus additional compensation based upon the amount of business transacted. The records show that under Lias' management the amount of business has more than doubled. There is evidence to the effect that the general manager of another race track receives $60,000 per year and the manager of another track is paid $75,000 per year. This type of employment is highly skilled and technical.

The receiver has stated that he is doubtful whether he could have successfully operated the track without the services of Lias and his experienced staff of assistants. All parties are agreed that Lias has taken a great interest in making the operation of the track by the receiver a success. During the meets he has been at the track regularly from 7:30 a. m. until after midnight, supervising the maintenance of the track and getting it ready for the next day's operation. Approximately 400 people are employed at the track. Another meet has been scheduled for July 18, 1953, and Lias has agreed to continue as manager, regardless of the decision of the court as to the amount of his compensation and regardless of the decision of the court as to whether the amount allowed him is paid to him for living expenses or is applied to the payment of taxes claimed by the government. It is my opinion that the sum of $35,000 should now be allowed to William G. Lias as payment on account for his services, up to and including April 30, 1953.

Lias has devoted full time to the receivership. Between meets he has been busy looking after a staff of 25 or more employes engaged in maintenance and repairing the property in preparation for the next meet. More than 700 horses occupy stables at the track during a meet.

■ Carl Schmidt, the receiver, is an attorney practicing at Wheeling, W. Va. He has devoted part time to the receivership. He has lost certain clients because the receivership made it impossible to look after their business. He has had the responsibility of handling almost $17,000,000 in the two meets last year, and of working out the details of contracts with the company operating the concessions. It has taken a great amount of his time. He has done the legal work for the receivership, making it unnecessary to pay counsel for the receivership. His work has been highly satisfactory. It is my opinion that he should be allowed the sum of $25,000 as payment on account for his services.

Both the allowance to the receiver and the allowance to the general manager are partial allowances for services, up to and including April 30, 1953.

With reference to the allowance to Lias, the government claims that it has a lien upon such allowance and that such amount must be paid to his receiver for payment upon its tax lien, in the event that the government wins the tax suit which is now pending before the Tax Court of the United States at Washington, D. C. Lias claims that the government lien does not attach to after-acquired property allowed to him as compensation for services to the receiver, and asks that the compensation be paid direct to him. Both sides have asked to file briefs on the question relating

to the tax lien. I am therefore deciding only the question of partial allowance, and withholding my decision as to whether the amount of the allowance to Lias shall be paid to him or applied to the payment of the tax lien.