**UNITED STATES of America,**
**Plaintiff,**

v.

**William G. LIAS et al., Defendants.**

**Civ. No. 565-W.**

United States District Court
N. D. West Virginia, Wheeling Division.

Sept. 30, 1955.

---

**32**

See also 113 F.Supp. 502.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Homer R. Miller, Special Assts. to the Atty. Gen., and John R. Morris, U. S. Atty., for N. D. West Virginia, for plaintiff.

Charles J. Margiotti and Samuel Goldstein, Pittsburgh, Pa., Thurman Hill, Washington, D. C., Carl G. Bachmann and Charles Ihlenfeld, Wheeling, W. Va., for defendants.

WATKINS, Chief Judge.

Petitions have been filed by Wheeling Downs, Inc. and Wheeling Downs Racing Association, and in behalf of other members of the Lias family asking that the receivers for these companies be discharged and the receiverships terminated.

These corporations were placed in receivership on February 22, 1952. Receivers were also appointed for Lias and other Lias enterprises. The court's reasons for receivership were fully set forth in findings of facts and conclusions of law set forth in a lengthy opinion. United States v. Lias, D.C.N.D.W.Va., 103 F.

Supp. 341. The appointment of the receivers was vigorously contested, and upon appeal the decision of this court was affirmed *per curiam.* Lias v. United States, 4 Cir., 196 F.2d 90. This court found:

(a) That Lias had committed waste and dissipation by transferring his assets to various corporations, including Wheeling Downs, Inc., the owner of a race track at Wheeling, W. Va., which corporation was not indebted to the government for taxes, and that dividends from gambling enterprises had been diverted by Lias into Wheeling Downs, Inc.

(b) That Wheeling Downs, Inc., was heavily indebted to the debtor taxpayers, William G. Lias, Zellers Steak House, Inc., and Automatic Cigarette Sales Corporation in large amounts; that Wheeling Downs, Inc., had very little liquid assets and was unable to pay its debts to these taxpayers without selling, mortgaging or liquidating its permanent assets; and that the sole income of Wheeling Downs, Inc. consisted of rentals, under a lease, from Wheeling Downs Racing Association.

(c) That Lias controlled the race track, dealt with the assets as if they were his own and that to leave these companies under his control in view of their past history might seriously impede the government in the collection of its taxes from Lias, Zellers Steak House and Automatic Cigarette Sales Corporation, and would "open the door to waste and dissipation of assets in the future."

(d) That the race track and other Lias corporations were heavily indebted to Lias and other Lias enterprises, against whom tax liens had been filed, and that these claims would not be collected unless receivers were appointed; that there was substantial evidence to believe that Lias owned a majority or all of the stock of these companies, and had transferred stock in these companies to relatives without consideration.

(e) That these companies were paying out large sums to Lias which he dispers-ed on personal debts completely ignoring the tax liens.

(f) If it was finally determined that Lias was the owner of all "or the majority of the stock" in the non-taxpayer corporations, then Lias' receiver would be entitled to vote the Lias stock to liquidate the corporation as a result of which the government would realize more than if it sold the stock.

(g) That Lias had been concealing assets including stocks, real estate and bank accounts in the names of others than their true owners.

(h) That because of the large open accounts which these companies have against each other, which must be protected by appropriate legal action, it is necessary to appoint separate receivers where such adverse interests appear.

(i) That receivers should be appointed to protect and preserve the assets of such non-taxpayer companies until such time as the true ownership of stock can be determined, and until such time as it can be determined whether an equity receiver is necessary to liquidate the non-taxpayer companies to pay the tax liens. (Finding 11).

(j) That it will be the aim of the court to conserve the properties, maintain the business as a going concern, and finally, when the rights of all parties have been determined and satisfied, to turn the property back to the owners.

By an agreed order entered on March 1, 1954, it was determined that Lias owns 56.6% of the stock in Wheeling Downs, Inc., and 60% of the stock in Wheeling Downs Racing Association. The balance is owned by Lias relatives. On the same date an agreed order was entered to the effect that Wheeling Downs, Inc. was indebted to William G. Lias on accounts and notes in the total sum of $589,382.50; to Zellers Steak House, Inc., in the amount of $6,000; to Automatic Cigarette Sales Corporation in the amount of $86,500; to Wheeling Downs Racing Association in the sum of $296,-969.80, and to Laconia, Inc., in the sum

of $445,436.54, making a total indebtedness of $1,424,288.84.

On May 26, 1955, the Tax Court of the United States handed down an opinion in the case of Lias v. Commissioner, 24 T.C. 280, in which it was held that Lias owed practically all of the tax claimed by the government, amounting to more than two million dollars. In the case against the Automatic Cigarette Sales Corporation, the Tax Court of the United States has held that the corporation owes the government in excess of $100,000.

Petitioners contend that there is no authority to sustain the appointment of receivers to take over the operations of corporations in which the taxpayer merely has a stock interest where such corporations are not indebted to the government for taxes; that the determination that Lias does not own all the corporation stock removes all reasons for continuance of receiverships; that the expense of multiple receiverships constitutes grounds for termination of such receiverships; that the liens of the government will be adequately protected if these receiverships are terminated, and that the expense of the receiverships is an undue burden on the minority stockholders.

■■■ Whether or not there is authority to sustain the appointment of receivers of the non-taxpayer corporations is a closed question and cannot be asserted here. Upon the previous hearing this court held that the receivers could and should be appointed and that there was substantial evidence to show that Lias owned all or a majority of the stock. This decision was upheld on appeal, and the decision of the appellate court is the law of the case on the points presented, to be followed in all subsequent proceedings in that case. Aetna Life Ins. Co. v. Wharton, 8 Cir., 63 F.2d 378. Where the reason or necessity for continuing the receivership has ceased the property should be discharged and restored to its owners. Skirvin v. Mesta, 10 Cir., 141 F.2d 668. The only change relied upon by petitioners in this case is that there has been a determination of the stock ownership. While this may eliminate the necessity for receiverships for this particular reason, it increases the need in another important particular, i. e., the court's finding that if Lias owns all or a majority of the stock it may be necessary to liquidate the assets of these companies to settle the tax liens. (Finding 12). As pointed out above, there were other reasons for the appointment of receivers which still exist.

■■■ Multiple receivers were appointed by the court in the exercise of a sound discretion and such action was upheld on appeal. The multiple receiverships were found necessary because of the adverse interests of the companies.

■■■ Petitioners argue that the government would be adequately protected by the injunction and by the control of the majority of stock by Lias' receiver. It is true that such measures afford a great deal of protection, but there is still the matter of the large indebtedness of these companies to Lias and other Lias enterprises and no liquid assets with which to discharge the same. If the receivers were discharged, the result would be the sale of the race track to satisfy some of the indebtedness and consequent injury to the rights of all parties. The appointment of receivers has resulted in keeping the property rights in status quo pending the final determination of Lias tax liabilities. One of the main reasons for appointment of receivers was the existence of the open accounts, the lack of liquid assets to pay them, and the likelihood that they would soon become barred by limitations. If the government claims are sustained on appeal, it will apparently be necessary to liquidate the assets of these companies to meet their debts. This can best be done by receivers. Legal proceedings now would stop the operation of the race track, whereas it can continue operations under receivership. (Finding 20). It is most important to all parties that the good will of the track be preserved and that it be kept in good repair. This can best be accomplished under receiverships.

The minority stockholders cannot be heard to complain about the expense of these receiverships. They participated and aided Lias in the very things which prompted the court to place these companies under receivership.

No good reason has been shown why the receiverships should be terminated. Almost all the grounds which caused the court to appoint receivers are still present and are just as cogent today. The receivers were appointed to conserve the property, maintain the business as a going concern, and finally when the rights of all parties have been determined and satisfied, to turn the property back to the owners. The rights of all parties have not been finally determined, and most certainly none of the claims and debts has been paid.

The race track has been kept in good operating condition. The good will of the track has been preserved, and substantial profits have been made, which have been invested in government bonds, and will inure to the stockholders. The minority stockholders have benefited by the operation of the track.

The petitions to terminate the receivers are denied.