William G. LIAS, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

William G. LIAS and Alice B. Lias, his wife, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 7177, 7178.

United States Court of Appeals Fourth Circuit.

Argued June 22, 1956.

Decided Aug. 3, 1956.

Thurman Hill, Washington, D. C., and Charles J. Margiotti, Pittsburgh, Pa. (Samuel Goldstein, Pittsburgh, Pa., on the brief), for petitioners.

Homer R. Miller, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., A. F. Prescott, John J. McGarvey and Arthur I. Gould, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

These are individual tax cases for the years 1942 to 1948, inclusive. The Tax Court of the United States sustained deficiencies and penalties totaling some $2,-000,000. One taxpayer, our petitioner William G. Lias, is involved in all years, and his wife is jointly and severally liable for 1947 and 1948. The Tax Court made long and detailed findings of facts and rendered an exhaustive opinion.[1] To relate the background of this controversy, or to recite the underlying material upon which decisions of the present issues must be based, would be to repeat at considerable length what was said by the Tax Court. We see no need to do so. We shall therefore superimpose the following discussion upon the Tax Court's findings and discussion without repeating them.

Petitioners urge (1) that the Tax Court erred in approving the use of a net worth computation upon a family group basis as a means to the ascertainment of a single individual's net income; (2) that the net worth computation was erroneous, in that (a) the opening statement of assets was erroneous, (b) credit was not given petitioner for monies borrowed during the period involved, and (c) credit was not given for use of a certain distributive share of the profits of one of the enterprises in which petitioner was engaged; and (3) that the Tax Court erroneously found fraud and erroneously found that the statute of limitations did not bar the deficiencies for 1942, 1943 and 1944.

The Supreme Court, in Holland v. United States,[2] approved the use of the net worth method of ascertaining net income in certain classes of cases. Even prior to that the Court had approved the use of the method where the owner of a network of gambling houses had received unreported income in a substantial amount.[3] The present case presents a situation similar to the ones faced in those cases. The application of the net worth method is thus firmly established. But petitioner urges that the Commissioner and the Tax Court in the case at bar extended the use of the method beyond permissible bounds.

■ The taxing authorities faced an unusual problem in attempting to ascertain the accuracy of the petitioner's income tax returns. During the taxable years here involved he received income from five partnerships, in which he and his brother, John Lias, were partners, and from seven corporations, of which he and members of his family were record owners. The revenue agents ascertained that the petitioner carried out many large cash transactions as to which no records were kept by him. He stated repeatedly to the agents that all assets, regardless of whether they were in the names of his wife, brother, mother-in-law or brothers-in-law, were his to do with as he saw fit. He was unable to identify the source of funds used to acquire various assets. He refused to furnish a net worth statement. Corporate dividends were not paid in accordance with stock record ownership. Stocks of record were not in the names of the true owners. Bank accounts and assets other than cash were shifted from one name to another. The Tax Court found that "The petitioner so conducted his own affairs and those of the 'Lias Group' as to make it impossible to identify the individual ownership of assets." Faced with this situation the revenue agents made a net worth computation on the Lias family group as a whole. They then allocated to the wife, brother, mother-in-law and brothers-in-law the amounts of net income on which they had paid income tax. The balance of the net income shown by the net worth computation they allocated to petitioner.

1. William G. Lias, 24 T.C. 280 (1955).

2. 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

3. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943).

When the case came on for trial before the Tax Court the Commissioner established with meticulous detail the computations of his agents. Petitioner took the stand and, without documentary or other support, proffered his explanation. He was on the stand for several days. The Tax Court concluded: "Making due allowance for the petitioner's unfortunate position the Court, after a considered appraisal, is not disposed to give any credibility to his unsupported testimony." The court also said, "He was evasive, contradictory, and unresponsive."

Some of the figures are startling. For the year 1945, the year of the maximum tax deficiency, the total net income reported by the family group, as adjusted with the revenue agents, was $121,977.54, and the net income reported by petitioner was $76,336.18, or a total of $198,313.-72. The net assets of the group increased by $540,575.21 during that year, and total expenditures of $245,456.03 were made, indicating a consolidated net income of some $785,000. Among the events of the year was the issue to petitioner and his wife of stock in Laconia, Inc., at a cost of $235,194.98. For part of this stock Laconia, Inc., received a building known as the Firestone Building, which petitioner had purchased in 1944 for cash in the amount of $200,000, placing the title in the name of his wife. During the year 1945 petitioner purchased with cash $75,-000 of United States Treasury Bonds. In that year a bank account in the name of petitioner and his brother, John, was closed out by transferring some $51,000 to a savings account in the name of petitioner and his wife. During the year petitioner and his wife purchased a residence for $46,000 cash. During the year he advanced $69,679.34 to Laconia, Inc., on open account, and the next year, against the cash thus advanced, stock was issued to petitioner, his wife, his brother, his nephew, and the latter's wife. During the year 1945 five new bank accounts were opened and seven were closed. The agents found that during the year cash was advanced to Wheeling Downs, Inc., in the amount of $167,500. These details are not recited as a full explanation of the computations but are given as illustrative of the factual background with which the cases are concerned.

The agents were unable to find property in any considerable amounts belonging to members of the family. The various partnerships and corporations were all engaged in gambling enterprises of some sort, and the petitioner was undoubtedly the owner, backer and operator of those enterprises. The Tax Court found as a fact that the bank accounts and certain real estate and stock belonged to the petitioner. It found that "It was the practice of the petitioner to place bank accounts, real estate, and stock in the names of others than the true owners." In this respect the Tax Court made reference to findings made by the United States District Court for the Northern District of West Virginia in connection with the appointment of receivers for the petitioner and five corporations alleged to have been owned and controlled by him.[4] These were five of the seven corporations here involved. The Tax Court concluded:

"While the consolidated family net worth technique does not appear to have been resorted to heretofore, we think its use is permissible as embraced within the scope of the net worth technique in civil cases of the character under consideration and involving the complexities and unprecedented circumstances presented. In our opinion no substantial injury results to the petitioner. Extraordinary situations require the adoption of unusual methods to resolve them. Mindful of the pitfalls inherent in any net worth method, we approve the respondent's use of the consolidated net worth method in the instant proceedings."

4. United States v. Lias, 103 F.Supp. 341 (1952), affirmed 196 F.2d 90 (4th Cir. 1952).

882

We agree with the foregoing statement.

■ Petitioner says that the Commissioner's computation of the opening net worth of the family group was erroneous. This net worth was $164,732.97. Petitioner says (Brief, pp. 68–69) that an examination of the entire record "leaves one with a firm conviction that he was a man of substantial means up to and including January 1, 1942, and that he had accumulated savings as of the beginning of the period of between $850,000 and $950,000, which included about $700,000 in cash." In the first place petitioner offered no evidence whatsoever to support a claim of any such amounts of savings or cash. He says in his brief that "It is totally unrealistic, in view of the uncontradicted evidence in this case as to the extent of the taxpayer's bootlegging and gambling activities in the 1920's and 1930's, and in view of * * * his mode of living and his successful businesses throughout the period prior to the starting period," to make a finding that he had no cash. Petitioner himself offered no evidence persuasive to the Tax Court as to large amounts of savings or cash as of January 1, 1942, and, as we have indicated, none of his family except one took the witness stand. No documentary proof was offered. In the second place the revenue agents, despite an exhaustive and meticulous search, were unable to uncover any evidence of substantial savings or cash. In the third place the petitioner conclusively established to the Commissioner of Internal Revenue, when his returns for the years up to 1941 were under consideration, that he had no funds whatsoever. The details are recited by the Tax Court in its opinion. From 1937 through 1941 the revenue authorities were actively endeavoring to find property of the petitioner with which to meet his tax liabilities. The taxpayer made numerous offers in compromise based upon inability to pay, and at one point he gave a series of postdated checks on the ground that he then had no funds with which to meet his obligations. We agree with the Tax Court that the petitioner utterly failed to establish error in the Commissioner's opening net worth statement.

■■ Petitioner urges that the allocation of the group net income among the several members of the group was erroneous. The question is: If this total income was the income of the group, what part of it was the income of each member? This is a problem of presumption and proof. The Tax Court found, as we have indicated, that petitioner frequently carried his own assets in the names of his wife, his brother, and others. It found that it was impossible to separate the individuals and compute their several net worths. It found, as we have indicated, that petitioner owned the assets involved. As the matter came to the Tax Court, the Commissioner had determined that the shares of the persons other than petitioner were the amounts reported by them as income, after the adjustments made with the revenue agents. That determination was at that point presumptively correct.[5] The whole matter was then opened wide before the Tax Court. But no member of the group appeared to claim participation in excess of the amounts taxed to them. None appeared on the witness stand except a brother-in-law, and he did not claim ownership of any such excess amount. The Tax Court heard petitioner for days and did not believe his shifting of the burden to the other members of his family. As we have already emphasized, no documentary proof was presented. On the other hand the Commissioner produced much proof, and the findings and opinion of the Tax Court are replete with facts indicating that petitioner and his operations were the source of the income. Upon this state of the record we cannot say that the conclusions of the Tax Court as to the true owners of this income are clearly erroneous. We must therefore affirm the findings.

The other points raised by petitioner, which we have listed in the beginning of

5. Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346 (1938).

this opinion, are discussed and disposed of in the findings and opinion of the Tax Court. We agree with that court's treatment and disposition of the items.

The amounts of net income found by the Tax Court to have been omitted from the petitioner's tax returns, and the circumstances under which the omissions are shown to have occurred, are amply sufficient to support the fraud penalties.

Fraud having been established, the statute of limitations does not apply.

Affirmed.