Vivian H. Pugh v. Commissioner. Vivian H. Pugh and Ann R. Pugh v. Commissioner.
Pugh v. Commissioner
Docket Nos. 89843, 89844.
United States Tax Court
T.C. Memo 1964-18; 1964 Tax Ct. Memo LEXIS 319; 23 T.C.M. (CCH) 90; T.C.M. (RIA) 64018; January 29, 1964
*319 Merrill R. Talpers for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined deficiencies in income tax and additions to tax as follows: Vivian H. Pugh Docket No. 89843 Additions to the Tax
1939 Internal Revenue Code
Year
Deficiency
Sec. 293(b)
Sec.
294(d)(1)(A)
1948
$1,238.37
$ 619.19
$ 83.52
1950
4,507.04
2,253.52
372.81
Vivian H. Pugh and Ann R. Pugh Docket No. 89844 Additions to the Tax
1939 Internal Revenue Code
1954 I.R.C.
Sec.
Sec.
Year
Deficiency
Sec. 293(b)
294(d)(1)(A)
294(d)(2)
Sec. 6653(b)
1949
$ 1,417.62
$ 708.81
$ 93.28
1951
9,147.38
4,573.69
803.52
1952
10,149.80
5,089.81
889.45
1953
6,628.16
3,429.41
709.34
1954
23,274.29
$1,535.82
$12,404.49
1955
24,376.07
12,562.67
1956
15,870.82
8,066.70
The issues to be decided are: (1) Whether petitioners understated their income on their returns for the years 1948 through 1956 in the amounts as determined by respondent; (2) Whether any part of the deficiencies was due to fraud with intent to evade *320 the payment of taxes; (3) Whether the assessment and collection of the deficiencies for the years in question are barred by the statute of limitations; (4) Whether petitioners are liable for additions to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939 for the years 1948 through 1953; and (5) Whether petitioners are liable for additions to tax under section 294(d)(2) of the 1939 Code for the year 1954. Findings of Fact The petitioners, Vivian H. Pugh and Ann R. Pugh, are husband and wife, who resided during the taxable years at Sioux City, Iowa. They filed joint income tax returns for the year 1949 and the years 1951 through 1956, and Vivian H. Pugh filed individual returns for the years 1948 and 1950, with the collector or district director of internal revenue at Des Moines, Iowa. Vivian H. Pugh will hereinafter sometimes be referred to as the petitioner. Petitioner was born in Chelsea, Iowa, in 1896. He is a high school graduate and had some college training at Leander Clark College. Petitioner was employed in various capacities by IowaPublic Service Company and its predecessor from October 1916 to July 31, 1956. During the taxable years he served *321 as superintendent of the company's gas plant at Sioux City until June 30, 1952, and as purchasing agent for the company from July 1, 1952 to July 31, 1956. From August 1956 to December 31, 1956, petitioner was employed as officer manager and treasurer of Smith Electrical and Industrial Supply Company in Sioux City. Petitioner also was a member of a partnership with Claude G. Brent, operating a grocery store under the name Brent-Pugh Supermarket, from 1950 to 1956. He owned at least three farms, one near Laurel, Nebraska, acquired in 1951, one near Waterloo, Iowa, acquired in 1953, and one near Whiting, Iowa, acquired in 1954. Petitioner also made substantial purchases and sales of commodities and securities and had other business interests during the taxable years. Ann R. Pugh was employed during the taxable years as a bookkeeper in Sioux City. Petitioner received commissions or "kick backs" from various suppliers with whom he dealt in making purchases for his employer, IowaPublic Service Company. Some of these commissions were paid directly to petitioner, while others were paid to a partnership named Alco Engineering Company (hereinafter sometimes referred to as Alco), consisting *322 of petitioner and his wife. Alco was formed solely to receive commission payments for petitioner and had no other business. It had a mailing address in Kansas City, Missouri, and had one or more bank accounts. Partnership income returns, Form 1065, were filed in the name of Alco for the years 1954, 1955 and 1956. The gross income reported on those returns consisted entirely of commissions. Deductions were claimed for certain purported expenses, and the amounts shown as net income of Alco were reported by petitioner and his wife as income from partnerships on their joint returns for the respective years. The income from commissions and purported expenses in connection therewith, as reported on the petitioner's returns for the years 1952 through 1956 (including the amounts reported on the partnership returns filed by Alco), were as follows: 1952
1953
1954
1955
1956
Commissions reported
$6,692.35
$20,804.92
$10,460.76
$18,651.18
Expenses claimed
2,617.21
7,008.48
3,640.50
4,332.00
Net commissions
$984.20 *
$4,075.14 *
$13,796.44
$ 6,820.26
$14,319.18
reported
*323 The amounts actually expended by petitioner in connection with the receipt of commissions did not exceed $1,308.61 in 1953, $3,705.85 in 1954, $1,500.25 in 1955, and $2,166 in 1956. The amounts by which the commissions reported on the 1953 return were reduced included, among other things, $100 paid to Marjorine McNall, a paraplegic who was unable to work, and $175 paid to Vernon J. Pugh, petitioner's son. The deductions claimed on the Alco partnership return for 1954 included, among other things, $220 paid to Marjorine McNall and deducted as "outside labor," and $385 paid to Vernon J. Pugh and deducted as "professional services." Neither of these individuals performed any services with respect to the commissions received by petitioner, and the payments made to them during 1953 and 1954 represented gifts from petitioner. The following commissions received by petitioner were not reported on either the joint returns filed by petitioner and his wife or the Alco partnership returns: Year
Payor
Amount
1953
Vernon I. Russell
$ 2,010.00
1954
Vernon I. Russell
670.00
Stewart Oil Company
10,290.00
Wigman Company
474.30
1955
Vernon I. Russell
1,621.00
Stewart Oil Company
200.00
*324 Petitioner also failed to report the following specific items of other income on his individual or joint returns for the respective years: Year
Item
Amount
1949
Interest
$ 52.50
1950
Dividends
150.00
Income from Brent-Pugh Supermarket
461.47
1951
Interest
255.07
1952
Interest
228.93
1953
Dividends
340.00
Interest
246.50
1954
Interest
1,999.19
Income upon cancellation of
1,026.81
indebtedness
On his individual or joint returns for the years 1948 through 1951, petitioner claimed deductions for business automobile expenses as follows: Amount
Business Mileage
Year
Claimed
Reported
1948
$ 854.96
12,000 miles
1949
1,127.63
12,000 miles
1950
990.65
12,000 miles
1951
990.65 [1]
15,000 miles
During these years, petitioner was employed as superintendent of the Sioux City gas plant. He had little occasion to use his automobile in connection with his duties, and his employer would have reimbursed him for any expenses so incurred. Commencing in 1952, *325 during which year petitioner became purchasing agent, he received reimbursement from his employer for automobile expenses and other business expenses, such as meals, entertainment, hotel expenses, telephone expenses and dues allegedly incurred by him on his employer's behalf. During each of the years 1952 through 1956, the reimbursements received by petitioner for expenses (other than automobile expenses) exceeded the amounts actually expended by petitioner for such purposes. These excess reimbursements were caused by petitioner's practice of claiming reimbursement for expenses, such as meals and entertainment, which were actually paid for by the suppliers from whom he purchased goods. Petitioner followed this practice so that his employer would think that petitioner would not accept any form of gratuity from a supplier. No part of these excess reimbursements were reported by petitioner as income on his returns for the respective years. The amounts reported, actual expenses and reimbursements, were as follows: Automobile Expenses
Other Expenses
Expenses
Reimburse-
Actual
Amount
Shown on
ment
Reimburse-
Actually
Reimburse-
Year
Return
Reported
ment
Spent
ment
1952
$1,352.02
$ 716.46
$ 742.46
$ 785.96
$1,370.30
1953
1,642.77
1,116.46
1,125.60
1,125.19
2,707.50
1954
1,648.39
597.30
729.74
1,301.52
1955
1,513.00
531.00
585.66
779.77
1,383.34
1956
979.98
444.96
397.36
486.20
802.65
*326 The records kept by petitioner did not accurately reflect his income for the taxable years. Respondent computed the income of petitioner and his wife according to the net worth method as follows: 1948
1949
1950
1951
1952
Total assets
$25,088.32
$22,708.97
$39,330.28
$79,553.57
$106,896.80
end of year
Total
18,360.56
9,841.31
15,120.15
27,456.72
29,045.36
liabilities,
end of year
Net worth, end
$ 6,727.76 *
$12,867.66 *
$24,210.13 *
$52,096.85
$ 77,851.44
of year
Less: Net
679.46
6,727.76
12,867.66
24,210.13
52,096.85
worth,
beginning of
year
Increase in net
$ 6,048.30
$ 6,139.90
$11,342.47
$27,886.72
$ 25,754.59
worth
Nondeductible
4,545.25
5,595.83
6,746.66
5,549.32
7,530.77
expenditures
TOTAL
$10,593.55
$11,735.73
$18,089.13
$33,436.04
$ 33,285.36
Less:
1,000.00
0
34.00
750.00
283.91
Nontaxable
receipts and
capital loss
carryovers
Net income
$ 9,593.55
$11,735.73
$18,055.13
$32,686.04
$ 33,001.45
Net income
3,771.60 **
4,820.25
3,529.34 **
6,904.96
7,066.53
reported
(before
exemptions)
Understatement
$ 5,821.95
$ 6,915.48
$14,525.79
$25,781.08
$ 25,934.92
in income
*327 1953
1954
1955
1956
Total assets, end of year
$145,003.66
$309,762.57
$298,979.05
$331,764.47
Total liabilities, end of
50,285.02
156,582.25
92,098.42
87,448.36
year
Net worth, end of year
$ 94,718.64
$153,180.32
$206,880.63
$244,316.11
Less: Net worth,
77,851.44
94,718.64
153,180.32
206,880.63
beginning of year
Increase in net worth
$ 16,867.20
$ 58,461.68
$ 53,700.31
$ 37,435.48
Nondeductible
13,361.22
15,262.46
16,591.79
23,968.47
expenditures
TOTAL
$ 30,228.42
$ 73,724.14
$ 70,292.10
$ 61,403.95
Less: Nontaxable receipts
and capital loss
carryovers
0
6,863.08
689.84
3,713.67
Net income
$ 30,228.42
$ 66,861.06
$ 69,602.26
$ 57,690.28
Net income reported
13,688.93
19,783.31
24,490.38
27,182.06
(before exemptions)
Understatement in income
$ 16,539.49
$ 47,077.75
$ 45,111.88
$ 30,508.22
No gifts, inheritances or other nontaxable receipts, other than those stated in the foregoing net worth computation, were *328 received by petitioner during 1948 or 1950, or by petitioner or his wife during 1949 or any of the years 1951 through 1956. On January 22, 1960, petitioner waived indictment and pleaded nolo contendere in the United States District Court to four counts of an information charging him with willfully attempting to evade income taxes for the years 1953 through 1956. On March 10, 1960, petitioner was sentenced to serve two years imprisonment on each count, the sentences to run concurrently, and to pay a total fine of $20,000. Petitioner and his wife executed timely consents extending to June 30, 1961, the period within which assessments of deficiencies could be made for each of the taxable years 1952 through 1956. The statutory notice of deficiency for these years was mailed to petitioner and his wife on September 6, 1960. Petitioners understated their income for the years 1948 through 1956 as determined by respondent. A part of the deficiency for each of these years was due to fraud with intent to evade the payment of taxes, and the returns for these years were false and fraudulent with intent to evade taxes. Opinion There was no appearance by or for petitioners at the trial *329 of these cases, and, accordingly, no evidence was submitted on their behalf. Respondent, however, has the burden of proving fraud by clear and convincing evidence. Shaw v. Commissioner, 252 F. 2d 681 (C.A. 6, 1958), affirming 27 T.C. 561 (1956); Arlette Coat Co., 14 T.C. 751 (1950); Henry S. Kerbaugh, 29 B.T.A. 1014 (1934). It must be established that there were deficiencies for each year due at least in part to fraud with intent to evade tax. Section 6653(b), I.R.C. 1954; section 293(b), I.R.C. 1939. In the instant case, respondent determined the alleged understatements of income by means of the net worth method. Most of the items entering into respondent's net worth computations were admitted to be correct by petitioners in the pleadings filed herein. Other items in the computation were established for the purposes of these cases by an order of the Court, under Rule 31(b)(5), for failure of petitioners to stipulate facts which are not or fairly should not be in dispute. The only significant item in the computation not so admitted or established is the amount of petitioner's cash on hand at December 31, 1947, the opening date *330 of the net worth computation. We are convinced from the testimony of respondent's witnesses and other evidence of record that the matter of the opening cash on hand was thoroughly investigated by respondent's agents, that all leads furnished by petitioners or developed by the agents themselves were exhausted, and that it was properly determined that petitioner had no cash on hand at December 31, 1947. Accordingly, we conclude that respondent has satisfied one of the essential conditions for use of the net worth method, the establishment with reasonable certainty of an opening net worth. Holland v. United States, 348 U.S. 121 (1954). Another requirement for use of the net worth method is proof that the net worth increases are attributable to currently taxable income. This may be shown by establishing a likely source of taxable income from which it could reasonably be found that the net worth increases arose, Holland v. United States, supra, or by negating all possible sources of nontaxable income. United States v. Massei, 355 U.S. 595 (1958). In the instant case, all possible sources of nontaxable income have been negated by petitioners' *331 admissions in the pleadings that they received no gifts, inheritances or other nontaxable receipts during the taxable years, other than those to which effect was given in respondent's net worth computation. In addition, a likely source of taxable income to account for the net worth increases has been shown, namely, petitioner's receipt of commissions or "kick backs" from suppliers with whom he dealt in making purchases for his employer. In our opinion, the evidence clearly shows that petitioners understated their income during each of the years in question. The understatements of income over the nine-year period, which were consistent in pattern and substantial in amount, constitute strong evidence of fraudulent intent. Baumgardner v. Commissioner, 251 F. 2d 311 (C.A. 9, 1957), affirming a Memorandum Opinion of this Court; Rogers v. Commissioner, 111 F. 2d 987 (C.A. 6, 1940), affirming 38 B.T.A. 16 (1938); William G. Lias, 24 T.C. 280 (1955), affd. 235 F. 2d 879 (C.A. 4, 1956); Arlette Coat Co., supra. Considering the entire record, including, in addition to the consistent understatements of income, *332 such factors as the demonstrated failure of petitioner to report certain specific commissions received, the failure to report certain dividends, interest and other income, the overstating of deductions, and the failure to maintain adequate records, we hold that respondent has carried his burden with regard to the fraud issue. The imposition of fraud penalties for all years is accordingly sustained. Our finding that the returns filed for all of the years in question were fraudulent disposes of the statute of limitations issue. In addition, timely consents to the extension of the period of limitations were executed by petitioners with respect to the years 1952 through 1956. Since no appearance was made by or for petitioners at the trial, no evidence was introduced to overcome the presumptive correctness of respondent's determinations as to the amount of the deficiencies in tax and the additions to tax under sections 294(d)(1)(A) and 294(d)(2) of the 1939 Code. These deficiencies and additions to tax are therefore sustained. Decisions will be entered for the respondent. Footnotes
*. Only the net amounts were shown on the returns filed for 1952 and 1953.↩
1. The amount of $990.65 was deducted, even though the schedule attached to the return itemizing the automobile expenses showed a total of $857.27.↩
*. Combined net worth of petitioner and his wife, and also individual net worth of petitioner. ↩
**. Total net income reported on individual returns filed by petitioner and his wife.↩