T.C. Memo. 2000-267

UNITED STATES TAX COURT

ARMIN UNGER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24681-97.                      Filed August 24, 2000.

Armin Unger, pro se.

<u>Carol A. Szczepanik</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows:

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(f) | Sec. 6653 (b)(1)(A) | Sec. 6653 (b)(1)(B) | Sec. 6653(b)(1) |
| 1987 | $6,083 | N/A | $4,562.25 | [1] | N/A |
| 1988 | 3,189 | N/A | N/A | N/A | $2,391.75 |
| 1989 | 29,501 | $22,125.75 | N/A | N/A | N/A |
| 1990 | 1,909 | 1,431.75 | N/A | N/A | N/A |

[1]50 percent of the interest due on $6,083

The issues for decision are: (1) Whether petitioner had unreported taxable income during the years at issue, and (2) whether petitioner is liable for additions to tax for fraud (section 6653(b))[1] and fraudulent failure to file (section 6651(f)).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Lakewood, Ohio. During the years in issue petitioner's sole source of income was the sale of illegal drugs. Petitioner derived sufficient taxable income from the illegal sale of controlled substances to require the filing of a Federal income tax return in each of the years in question. Petitioner did not file income tax returns for the tax years 1987 through 1990.

On July 18, 1994, petitioner pleaded guilty to the felony offence set out in section 7201[2] (Attempt to Evade or Defeat Tax)

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Sec. 7201 provides:

(continued...)

in relation to his 1989 tax year.  As part of his plea agreement, petitioner acknowledged:

> (1) he had a substantial income tax due and owing to the United States for the year 1989;
>
> (2) he made an affirmative attempt to evade that tax by failing to file an income tax return and pay the taxes owing for that year and by engaging in the following affirmative acts alleged in the information, namely-- dealing extensively in cash and money orders, using nominees to make certain expenditures, and structuring a currency transaction in excess of $10,000 to avoid the filing of a currency transaction report; and
>
> (3) he acted willfully and with the intent to defraud the government of the additional unreported taxes.
>
> Unger also acknowledges that he engaged in similar relevant criminal conduct with respect to his 1987 and 1990 income taxes.

Petitioner maintained multiple bank accounts.  Some of the accounts were held in his own name, numerous accounts were held jointly with his mother, Helen Unger, and still others were in his mother's name alone (collectively petitioner's bank accounts).  Petitioner had access to the joint accounts and the bank accounts styled in his mother's name and provided funds that

---

[2](...continued)
SEC. 7201.  ATTEMPT TO EVADE OR DEFEAT TAX.

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

were deposited into these accounts.  Petitioner and his mother maintained joint safe deposit boxes at Sun Bank from 1986 to 1989 and at California Federal Bank during 1990.  Petitioner also maintained safe deposit boxes in his own name at Huntington Bank and National City Bank from 1986 to 1990.

Petitioner purchased 10 automobiles during the period November 1986 to December 1990.  At least one of the automobiles, a 1990 Mazda, was purchased with cashier's checks showing an individual other than petitioner as the remitter.  That individual did not consent to the use of her name in the transaction.  Petitioner maintained message, mobile phone, and cellular phone service under three different assumed names.

Petitioner's sole income-generating activity was illegal narcotic sales.  However, when interviewed by respondent's agents in 1991, petitioner stated that he had no sources of income and that he was fully supported by his family.  Petitioner did not keep records of his income-generating activities and used cash frequently.  Consequently, respondent determined petitioner's income by using the "net worth method".  In making the determination of petitioner's opening net worth, respondent determined the total amount contained in petitioner's bank accounts, the amount of other cash on hand, and other known assets.

Respondent's net worth calculation is set out in the appendix.  Amounts in bank accounts held in the name of petitioner's mother and held jointly by petitioner and his mother are included in the net worth analysis.  Inclusion of these accounts in petitioner's net worth is supported by the evidence.  The net worth calculation is supported by the evidence and accurately shows petitioner's net worth and expenditures and establishes that petitioner had net taxable income of $33,685, $24,647, $108,609, and $18,038 for the years 1987, 1988, 1989, and 1990, respectively.

OPINION

When a taxpayer keeps no books, or keeps books that are inadequate, section 446(b) authorizes the Internal Revenue Service to compute the taxpayer's income by any method that clearly reflects income.  See sec. 446(b).  The "net worth method" has been accepted by the courts as satisfying this legislative mandate.  Holland v. United States, 348 U.S. 121 (1954).  The Supreme Court described the method as follows:

> In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an "opening net worth" or total net value of the taxpayer's assets at the beginning of a given year.  It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved.  The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting

figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income. [Id. at 125.]

The Commissioner's determination of tax liability, if calculated according to an acceptable procedure, such as the net worth method, is presumptively correct and places the burden of producing contrary evidence upon the taxpayer. See Helvering v. Taylor, 293 U.S. 507 (1935); Traficant v. Commissioner, 884 F.2d 258, 263 (6th Cir. 1989), affg. 89 T.C. 501 (1987); Calderone v. United States, 799 F.2d 254, 258 (6th Cir. 1986). Generally, the taxpayer will bear the burden of proving by a preponderance of the evidence that the Commissioner's determination is "arbitrary and excessive." Helvering v. Taylor, supra at 515; Traficant v. Commissioner, supra at 263; Calderone v. United States, supra at 258.

Petitioner testified on his own behalf. We do not find petitioner to be a credible witness. Petitioner's testimony was self-serving, unbelievable, and uncorroborated. Petitioner's testimony at trial also contradicted prior statements he had made. Petitioner did not call any other witnesses to testify, nor did he introduce any documents into evidence that would tend to show that respondent's determination was "arbitrary and excessive."

Petitioner challenges certain items that were included in the net worth computation. We will address each of these items.

In the net worth computation, respondent characterized a $6,200 payment made by petitioner in 1989 to Ms. Owca as a gift. Petitioner disputes respondent's characterization of his $6,200 payment to Ms. Owca and claims the expenditure was an investment. Ms. Owca is petitioner's former girlfriend. Petitioner also disputes respondent's characterization of a $10,000 payment made in 1988 to Mr. C. Owca as a loan receivable. Petitioner claims that he actually made the check out for $10, gave it to Ms. Owca, and that Ms. Owca then altered it to $10,000. Petitioner's explanations in both instances are unbelievable. The $6,200 payment to Ms. Owca was made by a check containing the notation that it was a gift. This was corroborated by Ms. Owca. The $10,000 check was drawn on an account in the names of petitioner and Helen Unger (petitioner's mother). It bears a notation that it was a loan, and the check does not appear to have been altered.

On brief, petitioner disputes the accuracy of respondent's use of $5,000 cash on hand as of December 31, 1986. The amount of opening cash on hand on December 31, 1986, was determined on the basis of petitioner's prior representations. Respondent's use of this amount of beginning cash on hand in the net worth analysis does not render the analysis unreliable. See United States v. Giacalone, 574 F.2d 328, 333 (6th Cir. 1978).

Petitioner also disputes the inclusion in the net worth computation of bank accounts that were held jointly with his

mother, or in her own name.  However, the evidence shows that petitioner transferred significant amounts of money to his mother's accounts and had access to and control over those bank accounts.  During the years in issue, Helen Unger was retired and had a modest income.  Her gross income, which conceivably could have been a source of some funds deposited to those accounts, was subtracted from respondent's net worth computation in arriving at petitioner's understatement of income.

When ownership or the source from which assets are purchased by a taxpayer and his family are confused, the Commissioner is permitted to resort to the use of a consolidated net worth statement.  See Smith v. Commissioner, 31 T.C. 1 (1958); Lias v. Commissioner, 24 T.C. 280 (1955), affd. 235 F.2d 879 (4th Cir. 1956).  Under the consolidated method, the combined taxable income of the taxpayer and his family group is determined by taking the increase in their combined net worth during each year, adding personal expenses paid each year, and making proper adjustments.  From the combined taxable net income determined under this method, the income reported for the other members of the family group is deducted, leaving the taxable net income of the taxpayer.  See Lias v. Commissioner, supra; Friedman v. Commissioner, T.C. Memo. 1968-145, affd. 421 F.2d 658 (6th Cir. 1970).

After considering the entire record, we find nothing that would support the conclusion that respondent's determination is arbitrary or excessive. Indeed, we find the items shown in the consolidated net worth calculation set out in the appendix to be supported by the record. Therefore, we sustain respondent's determination of deficiencies in each of the years in question.

Respondent also determined that petitioner is liable for an addition to tax for fraud for each of the years 1987, 1988, 1989, and 1990. Respondent bears the burden of proof on this issue. See sec. 7454(a); Rule 142(b). In order to discharge the burden, respondent must prove by clear and convincing evidence that: (1) An underpayment exists for each year in issue, and (2) some portion of the underpayment for that year is due to fraud. See sec. 7454(a); Clayton v. Commissioner, 102 T.C. 632 (1994); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). On the basis of respondent's net worth computation and the evidence supporting it, we find that respondent has clearly and convincingly established that petitioner had taxable income on which there was an underpayment of tax for each of the years in issue.

In order to show that some portion of an underpayment is due to fraud, respondent must also show that petitioner intended to evade taxes known to be owing by conduct designed to conceal, mislead, or otherwise prevent the collection of taxes. See Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968);

Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).  "Fraud * * * requires intentional wrongdoing. * * * To establish liability, the Commissioner [has] to show knowing falsehood".  Laurins v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  See Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  Fraudulent intent is rarely established by direct evidence.  As a consequence, courts have inferred fraudulent intent from various kinds of circumstantial evidence.  Some of the indicia of fraud that have been recognized include:  (1) Understatement of income, (2) failure to keep adequate records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealing assets, (6) failure to cooperate with tax authorities, (7) engaging in illegal activities, (8) attempting to conceal illegal activities, and (9) dealing in cash.  See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601.  Petitioner did all of these.

While willful failure to file does not in itself establish liability for additions to tax on account of fraud, such failure may be properly considered in connection with other facts in

determining whether any deficiency or underpayment of tax is due to fraud. See Stoltzfus v. United States, supra. The consistent and substantial understatement of income is itself evidence of fraud. See Laurins v. Commissioner, supra. Petitioner has been convicted of tax evasion under section 7201 for his 1989 tax year. His conviction was the result of a plea of guilty. "A guilty plea is as much a conviction as a conviction following jury trial. The elements of criminal tax evasion and civil tax fraud are identical." Gray v. United States, 708 F.2d 243, 246 (6th Cir. 1983), affg. T.C. Memo. 1981-1. This Court and numerous other Federal courts "have held that a conviction for Federal income tax evasion, either upon a plea of guilty, or upon a jury verdict of guilt, conclusively establishes fraud in a subsequent civil tax fraud proceeding through application of the doctrine of collateral estoppel." Id.; see also Fontneau v. United States, 654 F.2d 8, 10 (1st Cir. 1981) (guilty plea); Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 75-76 (1964) (guilty plea). We therefore hold that petitioner is collaterally estopped from asserting he is not liable for the addition to tax prescribed in section 6651(f) in relation to his 1989 tax year.

Petitioner argues he did not intend to evade taxes he knew to be owing. He claims that he wanted to, and intended to, eventually pay his taxes. He claims that he failed to file returns only because he believed that if he filed returns, it

would expose his criminal activity to other law enforcement agencies. We do not find petitioner's testimony in this regard to be truthful. Indeed, petitioner's plea of guilty to tax evasion for 1989 and his admissions in his plea agreement belie his argument.

Petitioner's plea agreement in part states:

(2) he made an affirmative attempt to evade that tax by failing to file an income tax return and pay the taxes owing for that year and by engaging in the following affirmative acts alleged in the information, namely -- dealing extensively in cash and money orders, using nominees to make certain expenditures, and structuring a currency transaction in excess of $10,000 to avoid the filing of a currency transaction report; and

(3) he acted willfully and with the intent to defraud the government of the additional unreported taxes.

Unger also acknowledges that he engaged in similar relevant criminal conduct with respect to his 1987 and 1990 income taxes. [Emphasis added.]

Petitioner's admission that he engaged in similar criminal conduct with respect to the 1987 and 1990 tax years, along with the other evidence, is sufficiently clear and convincing that petitioner's understatements of tax for 1987 and 1990 were due to fraud and that his failure to file returns for those years was fraudulent.

The same pattern of fraud existed both before and after the 1988 tax year. Petitioner admitted to illegal narcotics trafficking, conducted his business almost exclusively in cash, used aliases, kept and produced no records of his transactions,

hid assets in his mother's name, lied to respondent's agents about the source of his income, and consistently failed to file income tax returns.  This pattern constitutes clear and convincing evidence that petitioner's understatement of tax for 1988 was also due to fraud.

We hold that petitioner is liable for the additions to tax for fraud for 1987, 1988, 1989, and 1990 as determined in the notice of deficiency.

<u>Decision will be entered for respondent</u>.

## Appendix

### Net Worth Computation

| Assets: | 12/31/86 | 12/31/87 | 12/31/88 | 12/31/89 | 12/31/90 |
|---|---|---|---|---|---|
| Cash on hand | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $24,000.00 |
| Balance in bank accounts | 129,884.69 | 150,593.57 | 166,477.42 | 219,350.78 | 241,174.21 |
| Automobiles | 15,333.41 | 43,865.29 | 44,929.79 | 92,297.20 | 62,358.87 |
| Real estate | 52,500.00 | 52,500.00 | 52,500.00 | 52,500.00 | 52,500.00 |
| Loan receivable--C. OWCA | -0- | -0- | 10,000.00 | 10,000.00 | 10,000.00 |
|   Total assets | 202,718.10 | 251,958.86 | 278,907.21 | 379,147.98 | 390,033.08 |
| | | | | | |
| Liabilities: | | | | | |
| Charge cards--VISA | 311.23 | 1,504.43 | 1,192.36 | -0- | 2,237.27 |
|   Total liabilities | 311.23 | 1,504.43 | 1,192.36 | -0- | 2,237.27 |
| | | | | | |
| Net worth | 202,406.87 | 250,454.43 | 277,714.85 | 379,147.98 | 387,795.81 |
| Net worth at beginning of year | N/A | 202,406.87 | 250,454.43 | 277,714.85 | 379,147.98 |
|   Change in net worth | N/A | 48,047.56 | 27,260.42 | 101,433.13 | 8,647.83 |
| | | | | | |
| Add: | | | | | |
| Personal living expenses | N/A | 15,739.85 | 21,587.60 | 35,340.02 | 24,700.10 |
| Nondeductible losses (vehicles) | N/A | -0- | 952.50 | 1,662.50 | 15,628.09 |
|   Balance | N/A | 63,787.41 | 49,800.52 | 138,435.65 | 48,976.02 |
| | | | | | |
| Less: | | | | | |
| Gross income reported--H. Unger | N/A | (6,413.00) | (12,335.00) | (16,138.00) | (16,805.00) |
| Depreciation expenses | N/A | (800.00) | (800.00) | (800.00) | (800.00) |
| Understatement of rental expense | N/A | (2,843.00) | (1,430.00) | (1,733.20) | -0- |
| Nontaxable sources | N/A | (20,046.56) | (10,588.87) | (10,488.73) | (13,999.55) |
|   Understatement of income | N/A | 33,685.00 | 18,038.00 (rounded) | 24,647.00 | 108,609.00 |